UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAPAPORT USA, INC.

                      Plaintiff,

v.

NIVODA USA LLC.,

                      Defendant.

No. 1:25-cv-00171 (JSR)


**DEFENDANT NIVODA USA LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(6)**


KLARIS LAW PLLC
Matthew A. Leish
161 Water Street, Suite 904
New York, New York 10038
Telephone: (646) 779-4882
matthew.leish@klarislaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                          i-iii

PRELIMINARY STATEMENT                                                          1

STATEMENT OF FACTS                                                             3

STANDARD OF REVIEW                                                             7

ARGUMENT                                                                       8

   I.    RAPAPORT    HAS    NOT    OBTAINED    COPYRIGHT
        REGISTRATIONS FOR THE WEEKLY PRICE LISTS                        8

   II.   RAPAPORT FAILS TO STATE A CLAIM FOR COPYRIGHT
        INFRINGEMENT                                                   10

      A.   Plaintiff's Individual Prices Are Not Copyrightable          10

         1. The Prices Are Facts Not Entitled to Copyright Protection   10

         2. Copyright Protection is Barred by the Merger Doctrine       15

      B.   Rapaport Fails to Adequately Allege Actionable Copying       17

         1.  Plaintiff Fails to Allege Infringement of Protectable
           Elements                                                   17

         2.  There is No Substantial Similarity                        18

   III.  NIVODA'S REFERENCE TO A PERCENTAGE DISCOUNT IS
        FAIR USE                                                       20

      A.  The Court Can Find Fair Use on a Pre-Answer Motion to
         Dismiss                                                      20

      B.  The Fair Use Factors Mandate Dismissal                       21

CONCLUSION                                                                     25

# <u>TABLE OF AUTHORITIES</u>

**CASES**

<u>Achtman v. Kirby, McInerney & Squire, LLP</u>, 464 F.3d 328 (2d Cir. 2006)…………………………………………………………….....    8

<u>Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith</u>, 598 U.S. 508 (2023) ………………………………………………..................................    22

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)………………………………………….    7, 10-11, 18

<u>Authors Guild v. Google, Inc.</u>, 804 F.3d 202 (2d Cir. 2015)………………………    23-25

<u>BanxCorp v. Costco Wholesale Corp.</u>, 723 F. Supp. 2d 596 (S.D.N.Y. 2010). …………………………………………………………………………    13

<u>BanxCorp v. Costco Wholesale Corp.</u>, 978 F. Supp. 2d 280 (S.D.N.Y. 2013)……    12-16

<u>Barclays Capital Inc. v. Theflyonthewall.com, Inc.</u>, 650 F.3d 876 (2d Cir.2011)…    13

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) …………………………    7, 10-11, 18

<u>Boisson v. Banian, Ltd</u>, 273 F.3d 262, 268 (2d Cir. 2001)…………………………...    9

<u>Brody v. Fox Broad. Co., LLC</u>, No. 22CV6249 (DLC), 2023 WL 2758730 (S.D.N.Y. Apr. 3, 2023) ………………………………………………………...    21, 23

<u>Brown v. Netflix, Inc.</u>, 462 F. Supp. 3d 453 (S.D.N.Y. 2020), *aff'd*, 855 F. App'x 61 (2d Cir. 2021) ………………………………………………………………..    21

<u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569 (1994) ………………….……    23

<u>Cariou v. Prince</u>, 714 F.3d 694 (2d Cir. 2013) …………………………………    21

<u>Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.</u>, 150 F.3d 132 (2d Cir. 1998)……..    22-23

<u>CCC Information Services, Inc. v. Maclean Hunter Market Reports</u>, 44 F.3d 61 (2d Cir.1994) ……………………………………………………………………    14-15

<u>Coscarelli v. ESquared Hosp. LLC</u>, No. 18-CV-5943 (JMF), 2021 WL 5507034 (S.D.N.Y. Nov. 24, 2021)…………………………………………………………    10

<u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010) ....................    3

i

Energy Intel. Grp., Inc. v. Jefferies, LLC, 101 F. Supp. 3d 332 (S.D.N.Y. 2015)…    10

Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991)……………    9-10, 12, 17, 20

Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC, 586 U.S. 296 (2019)…..    8

Gal v. Viacom Int'l, Inc., 403 F.Supp.2d 294 (S.D.N.Y.2005) …………………    18

Google LLC v. Oracle Am., Inc., 593 U.S. 1 (2021) …………………….…...    21-22

Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539 (1985)..……..    24

Hughes v. Benjamin, 437 F. Supp. 3d 382 (S.D.N.Y. 2020) …………………….…...    21

In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549 (S.D.N.Y. 2004)……    7

Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69 (2d Cir. 1995)...    3

Kelley v. Morning Bee, Inc., No. 1:21-CV-8420-GHW, 2023 WL 6276690
(S.D.N.Y. Sept. 26, 2023). …………………………………………………………..    19, 21

Key Publications, Inc. v. Chinatown Today Publishing Enters., Inc., 945 F.2d 509
(2d Cir. 1991) …………………………………………………………………...    17

Kregos v. Associated Press, 937 F.2d 700 (2d Cir.1991); …………………….…...    16

L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419 (2d Cir. 2011)………………..    7

LMNOPI v. XYZ Films, LLC, 449 F. Supp. 3d 86 (E.D.N.Y. 2020)……………..    21

Malibu Media, LLC v. Doe, No. 18-CV-10956 (JMF), 2019 WL 1454317
(S.D.N.Y. Apr. 2, 2019) …………………………………………………………...    8

Marano v. Metro. Museum of Art, 472 F. Supp. 3d 76 (S.D.N.Y. 2020), aff'd, 844
F. App'x 436 (2d Cir. 2021) ………………………………………………………    21

Matson v. Board of Educ., 631 F.3d 57 (2d Cir. 2011) ……………………………    7

Matthew Bender & Co. v. W. Pub. Co., 158 F.3d 693 (2d Cir. 1998)……………..    20

Miracle Blade, LLC. v. Ebrands Commerce Group, LLC., 207 F. Supp. 2d 1136...    11

New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc., 389 F. Supp.
2d 527 (S.D.N.Y. 2005)……………………………………………………………    11, 14-15

<u>New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc.</u>, 497 F.3d 109 (2d Cir. 2007) ……………………………………………………………… 11-13, 15, 16

<u>Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.</u>, 602 F.3d 57 (2d Cir. 2010) ………………………………………………………………………… 17-19

<u>Project Development Group, Inc. v. O.H. Materials Corp.</u>, 766 F. Supp. 1348 (W.D. Pa. 1991) …………………………………………………………………… 11

<u>Ringgold v. Black Ent. Television, Inc</u>, 126 F.3d 70 (2d Cir. 1997)…………….. 18

<u>Sandoval v. New Line Cinema Corp.</u>, 147 F.3d 215 (2d Cir. 1998)……………… 18

<u>Sohm v. Scholastic Inc.</u>, 959 F.3d 39 (2d Cir. 2020)……………………………… 8

<u>Sparaco v. Lawler, Matusky, Skelly, Eng'rs LLP</u>, 303 F.3d 460 (2d Cir.2002)…... 12

<u>TCA Television Corp. v. McCollum</u>, 839 F.3d 168 (2d Cir. 2016)………………. 21

<u>Whiddon v. Buzzfeed, Inc.</u>, 638 F. Supp. 3d 342 (S.D.N.Y. 2022)………………. 21-23

<u>Yang v. Mic Network Inc.</u>, No. 20-4097-CV, 2022 WL 906513 (2d Cir. Mar. 29, 2022) ……………………………………………………………………………… 21

## OTHER AUTHORITIES

Copyright Office, Examination Practices, Chapter 613.7 (2021) ………………… 11

Jane C. Ginsburg, <u>No "Sweat"? Copyright and Other Protection of Works of Information After Feist v. Rural Telephone</u>, 92 Colum.L.Rev. 338 (1992)………. 20

Defendant Nivoda USA LLC respectfully submits this Memorandum of Law in support of its motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

This case presents the question of whether a company that, in its own words, sets "the international benchmark [prices] used by dealers to establish diamond prices in all the major markets" may use copyright law to prevent a another company from simply mentioning the percentage difference between that benchmark price and the actual sale price of a particular diamond. Because the copyright law does not contemplate or permit such a result, the Complaint must be dismissed.

Plaintiff Rapaport USA Inc. ("Rapaport") publishes a weekly diamond price list (the "Price List") contained in a document called "The Rapaport Diamond Report." The Report consists of short, narrative news updates about the diamond industry followed by a detailed table showing price values for categories of diamonds based on carat, cut, clarity, and color. The Price List is, as pled in the Complaint, "the international benchmark used by dealers to establish diamond prices in all the major markets."  Complaint, annexed as Ex. A to Declaration of Matthew A. Leish ("Leish Decl."), submitted herewith, at ¶ 2.  Rapaport claims that Defendant Nivoda USA LLC ("Nivoda") is infringing Rapaport's copyrights by allegedly "display[ing] diamond prices based upon or otherwise copied from The Rapaport Price List" on the Nivoda web site.  Compl. ¶ 23. The Complaint contains no allegations, and provides no details whatsoever, as to how or where the Nivoda site supposedly engages in such a display.  In fact, Nivoda's web site simply lists

---

[1] The claims against co-defendants Nivoda Limited and David Sutton have been voluntarily dismissed, leaving Nivoda USA LLC as the only remaining defendant.  Docket No. 17.

individual diamonds for sale by manufacturers and wholesalers, provides the actual sale price for each diamond (which has nothing to do with the prices listed by Rapaport), and also notes the percentage by which each individual sale price differs from the industry-standard price for that category from the Price List (though without mentioning Rapaport or the Price List).  Declaration of Jessica Young ("Young Decl."), submitted herewith, at ¶¶ 7-10 and Exs. D and E.  There is no other use of, nor reference to, any element of the Price List anywhere on the Nivoda site, and the actual table containing the Price List is never reproduced in whole or in part.   Id.

Rapaport's Complaint fails to state a claim for copyright infringement and must be dismissed on several independent grounds.  First, it suffers from a fundamental defect:  Rapaport has not obtained valid copyright registrations for the works it claims that Nivoda has infringed. While the Complaint alleges infringement of a weekly standalone Price List, the copyright registrations cited in the Complaint are actually registrations for a glossy magazine called RAPAPORT, published six times a year, containing dozens of articles, photographs, and other editorial content, as well as some version of a price list.  Since registration is a prerequisite to the filing of a copyright action, and since Rapaport has not actually registered the weekly Price Lists it claims to be at issue, the Complaint must be dismissed for that reason alone.  Second, the diamond prices from the Price List are not individually copyrightable because prices are unprotectible facts.  Courts have consistently rejected attempts to claim copyright protection for market-based valuations, and Rapaport cannot claim exclusive rights over industry-standard benchmark diamond prices. Third, even if the individual prices were copyrightable, Rapaport has not sufficiently pled a claim for copyright infringement because it has not alleged copying of any protectible elements and because the Price List and the allegedly infringing contents of the Nivoda web site are not substantially similar as a matter of law.  And fourth, even if Rapaport could

overcome those insurmountable hurdles, the Complaint still fails because Nivoda's indirect reference to these widely available benchmark prices is nonactionable fair use – a determination that this Court can and should make on a motion to dismiss under established Second Circuit precedent.

## STATEMENT OF FACTS

Rapaport is the publisher of the Price List.  Compl. ¶ 2.  According to the Complaint, the Price List "is Rapaport USA's opinion as to what diamonds of different sizes, color and clarity should sell for in the market, and it is the result of Rapaport USA's extensive hard work and expertise in the diamond industry."  Id.  The Price List, which is published "weekly on Thursdays at 11:59 pm EST"  (Compl. ¶ 18),  appears within a document called "Rapaport Diamond Report" that typically consists of a short narrative news section at the top, followed by a detailed grid-like table showing various categories of diamond organized by carat weight, color grades, clarity grades, and price per carat.  Young Decl. ¶¶ 2 and 3 and Ex. A.[2]  While the Price List contains occasional short footnotes with statements such as "0.60-0.69 may trade at 7% to 10% premiums over 0.50," Nivoda is not alleged to have copied any such narrative text.  The vast majority of the Price List is simply a table consisting entirely of numbers, with no narrative content or other protectible expression at all.  Id.

As Rapaport affirmatively alleges in the Complaint, the Price List "is the international benchmark used by dealers to establish diamond prices in all the major markets."  Compl. ¶ 2; see also Compl. ¶ 11 (Rapaport is "the leading source of diamond prices"); Young Decl. ¶ 2.

---

[2] The Court may consider the Price List and the other documents annexed to the Declarations submitted by Nivoda on this Motion to Dismiss because they are relied on in, and integral to, the Complaint.  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995); DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

The following is a typical page from the Rapaport Price List from December 29, 2023 (the full version is submitted herewith as Ex. A to the Young Declaration):

**RAPAPORT DIAMOND REPORT**

Tel: 877-987-3400 ◆ www.RAPAPORT.com ◆ Info@RAPAPORT.com

December 29, 2023 : Volume 46 No. 49: APPROXIMATE HIGH CASH ASKING PRICE INDICATIONS : Page 1

Round Brilliant Cut Natural Diamonds, GIA Grading Standards per "Rapaport Specification A3" in hundreds of US$ per carat.

**News:** Diamond market slow with trading centers on end-of-year break. Mastercard reports US Nov–Dec. holiday jewelry sales -2%, general retail +3.1%, e-commerce +6.3% and in-store +2.2%. Restaurant spending +7.8%, indicating shift from products to experiences. Manufactures focusing on Chinese New Year (Feb. 10) and Valentine's Day (Feb. 14) but keeping production low to avoid oversupply. G7 members update sanctions on Russian diamonds: US removes "substantial transformation" loophole. Antwerp Diamond Office to vet all rough imports into European Union. Rapaport wishes everyone a happy, healthy, prosperous and peaceful New Year.

**RAPAPORT : (.01 - .03 CT.) : 12/29/23 — ROUNDS — RAPAPORT : (.04 - .07 CT.) : 12/29/23**

| | IF-VVS | VS | SI1 | SI2 | SI3 | I1 | I2 | I3 | | IF-VVS | VS | SI1 | SI2 | SI3 | I1 | I2 | I3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D-F | 8.3 | 7.3 | 6.4 | 5.6 | 4.9 | 4.3 | 3.5 | 2.8 | D-F | 9.5 | 8.3 | 7.2 | 6.2 | 5.3 | 4.8 | 4.0 | 3.3 | D-F |
| G-H | 7.5 | 6.6 | 5.7 | 5.0 | 4.4 | 3.8 | 3.1 | 2.6 | G-H | 8.1 | 7.1 | 6.2 | 5.5 | 4.9 | 4.4 | 3.6 | 2.8 | G-H |
| I-J | 6.7 | 5.9 | 5.2 | 4.6 | 4.0 | 3.4 | 2.8 | 2.4 | I-J | 7.2 | 6.4 | 5.7 | 5.1 | 4.5 | 4.0 | 3.2 | 2.6 | I-J |
| K-L | 4.6 | 4.1 | 3.6 | 3.2 | 2.8 | 2.5 | 2.0 | 1.6 | K-L | 4.9 | 4.4 | 4.0 | 3.5 | 3.1 | 2.7 | 2.2 | 1.7 | K-L |
| M-N | 3.1 | 2.7 | 2.4 | 2.0 | 1.8 | 1.6 | 1.4 | 1.2 | M-N | 3.3 | 2.9 | 2.6 | 2.2 | 1.9 | 1.7 | 1.5 | 1.3 | M-N |

**RAPAPORT : (.08 - .14 CT.) : 12/29/23 — ROUNDS — RAPAPORT : (.15 - .17 CT.) : 12/29/23**

| | IF-VVS | VS | SI1 | SI2 | SI3 | I1 | I2 | I3 | | IF-VVS | VS | SI1 | SI2 | SI3 | I1 | I2 | I3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D-F | 10.6 | 9.6 | 8.5 | 7.6 | 6.8 | 5.7 | 4.8 | 4.0 | D-F | 12.5 | 11.1 | 9.8 | 8.5 | 7.6 | 6.4 | 5.2 | 4.4 | D-F |
| G-H | 9.3 | 8.5 | 7.7 | 6.9 | 6.2 | 5.2 | 4.3 | 3.6 | G-H | 11.0 | 9.9 | 8.7 | 7.7 | 6.8 | 5.7 | 4.7 | 4.0 | G-H |
| I-J | 8.4 | 7.7 | 6.8 | 6.1 | 5.4 | 4.7 | 3.9 | 3.2 | I-J | 9.7 | 8.7 | 7.6 | 6.7 | 5.9 | 5.2 | 4.3 | 3.6 | I-J |
| K-L | 6.6 | 5.9 | 5.3 | 4.7 | 4.0 | 3.4 | 2.8 | 2.3 | K-L | 5.3 | 4.7 | 4.1 | 3.6 | 3.1 | 2.6 | 2.2 | 1.8 | K-L |
| M-N | 4.3 | 3.9 | 3.5 | 3.0 | 2.6 | 2.2 | 1.9 | 1.6 | M-N | | | | | | | | | M-N |

*It is illegal and unethical to reproduce this price sheet. Please do not make copies.© 2023*

**RAPAPORT : (.18 - .22 CT.) : 12/29/23 — ROUNDS — RAPAPORT : (.23 - .29 CT.) : 12/29/23**

| | IF-VVS | VS | SI1 | SI2 | SI3 | I1 | I2 | I3 | | IF-VVS | VS | SI1 | SI2 | SI3 | I1 | I2 | I3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D-F | 14.6 | 12.6 | 11.1 | 9.6 | 8.4 | 6.9 | 5.6 | 4.8 | D-F | 17.4 | 15.0 | 13.0 | 10.9 | 9.4 | 7.6 | 6.0 | 5.1 | D-F |
| G-H | 13.1 | 11.4 | 10.0 | 8.7 | 7.5 | 6.3 | 5.1 | 4.3 | G-H | 15.3 | 13.1 | 11.5 | 9.7 | 8.3 | 6.9 | 5.5 | 4.6 | G-H |
| I-J | 11.2 | 9.9 | 8.7 | 7.6 | 6.6 | 5.6 | 4.6 | 3.9 | I-J | 12.5 | 11.1 | 9.9 | 8.4 | 7.3 | 6.0 | 5.0 | 4.2 | I-J |
| K-L | 9.0 | 7.8 | 6.8 | 5.8 | 4.8 | 4.0 | 3.4 | 2.8 | K-L | 10.2 | 8.8 | 7.7 | 6.7 | 5.7 | 4.6 | 3.7 | 3.0 | K-L |
| M-N | 6.9 | 5.9 | 5.1 | 4.3 | 3.6 | 2.9 | 2.4 | 2.0 | M-N | 8.6 | 7.4 | 6.2 | 5.3 | 4.6 | 3.6 | 2.8 | 2.2 | M-N |

**RAPAPORT : (.30 - .39 CT.) : 12/29/23 — ROUNDS — RAPAPORT : (.40 - .49 CT.) : 12/29/23**

| | IF | VVS1 | VVS2 | VS1 | VS2 | SI1 | SI2 | SI3 | I1 | I2 | I3 | | IF | VVS1 | VVS2 | VS1 | VS2 | SI1 | SI2 | SI3 | I1 | I2 | I3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D | 38 | 32 | 28 | 24 | 21 | 18 | 15 | 14 | 13 | 11 | 7 | D | 44 | 36 | 32 | 29 | 25 | 20 | 17 | 16 | 15 | 12 | 8 | D |
| E | 33 | 30 | 25 | 22 | 20 | 17 | 14 | 13 | 12 | 11 | 6 | E | 37 | 34 | 30 | 27 | 24 | 19 | 16 | 15 | 14 | 11 | 7 | E |
| F | 30 | 27 | 23 | 21 | 19 | 16 | 13 | 12 | 11 | 10 | 6 | F | 34 | 31 | 28 | 25 | 23 | 18 | 15 | 14 | 13 | 11 | 7 | F |
| G | 25 | 23 | 21 | 20 | 18 | 15 | 12 | 11 | 10 | 9 | 5 | G | 30 | 28 | 26 | 24 | 22 | 17 | 14 | 13 | 12 | 10 | 6 | G |
| H | 22 | 21 | 20 | 19 | 17 | 14 | 12 | 11 | 10 | 8 | 5 | H | 26 | 24 | 23 | 22 | 20 | 16 | 14 | 13 | 12 | 9 | 6 | H |
| I | 19 | 18 | 17 | 16 | 15 | 13 | 11 | 10 | 9 | 7 | 5 | I | 22 | 21 | 20 | 19 | 18 | 15 | 13 | 12 | 11 | 8 | 6 | I |
| J | 17 | 16 | 15 | 14 | 13 | 12 | 10 | 9 | 8 | 7 | 4 | J | 18 | 17 | 16 | 15 | 14 | 12 | 11 | 10 | 8 | 6 | 5 | J |
| K | 15 | 14 | 13 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 4 | K | 17 | 16 | 15 | 14 | 13 | 12 | 11 | 10 | 9 | 7 | 5 | K |
| L | 14 | 13 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 5 | 3 | L | 15 | 14 | 13 | 13 | 12 | 11 | 10 | 9 | 8 | 6 | 4 | L |
| M | 12 | 11 | 10 | 9 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | M | 15 | 14 | 13 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 4 | M |

W: 23.96 = 0.00%   ⊕ ⊕   T: 13.59 = 0.00%     |     W: 28.16 = 0.00%   ⊕ ⊕   T: 15.99 = 0.00%
0.60 - 0.69 may trade at 7% to 10% premiums over 0.50     |     0.70-0.73 may trade at discount. 0.80-0.89 may trade at 7% to 12% premium.

**RAPAPORT : (.50 - .69 CT.) : 12/29/23 — ROUNDS — RAPAPORT : (.70 - .89 CT.) : 12/29/23**

| | IF | VVS1 | VVS2 | VS1 | VS2 | SI1 | SI2 | SI3 | I1 | I2 | I3 | | IF | VVS1 | VVS2 | VS1 | VS2 | SI1 | SI2 | SI3 | I1 | I2 | I3 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D | 65 | 53 | 43 | 36 | 32 | 27 | 21 | 19 | 17 | 14 | 11 | D | 91 | 73 | 61 | 51 | 44 | 36 | 30 | 28 | 25 | 19 | 12 | D |
| E | 52 | 48 | 39 | 33 | 30 | 25 | 20 | 18 | 16 | 13 | 10 | E | 74 | 67 | 56 | 48 | 41 | 33 | 28 | 26 | 23 | 18 | 11 | E |
| F | 46 | 43 | 36 | 30 | 28 | 24 | 19 | 17 | 15 | 12 | 10 | F | 66 | 62 | 52 | 46 | 40 | 32 | 26 | 24 | 22 | 17 | 11 | F |
| G | 38 | 35 | 31 | 28 | 26 | 23 | 18 | 16 | 14 | 11 | 9 | G | 55 | 51 | 46 | 42 | 37 | 29 | 25 | 23 | 20 | 16 | 10 | G |
| H | 32 | 30 | 28 | 26 | 24 | 21 | 17 | 15 | 13 | 11 | 8 | H | 46 | 43 | 40 | 37 | 33 | 27 | 23 | 21 | 19 | 15 | 9 | H |
| I | 27 | 25 | 24 | 23 | 21 | 19 | 16 | 14 | 13 | 10 | 8 | I | 39 | 36 | 34 | 31 | 28 | 24 | 21 | 19 | 17 | 15 | 9 | I |
| J | 23 | 21 | 20 | 19 | 18 | 16 | 15 | 13 | 12 | 10 | 7 | J | 34 | 32 | 30 | 27 | 24 | 22 | 20 | 18 | 16 | 14 | 8 | J |
| K | 20 | 18 | 17 | 16 | 15 | 14 | 13 | 12 | 11 | 9 | 7 | K | 30 | 28 | 26 | 24 | 22 | 20 | 18 | 16 | 15 | 14 | 8 | K |
| L | 18 | 17 | 16 | 15 | 14 | 13 | 12 | 11 | 10 | 8 | 6 | L | 27 | 25 | 23 | 21 | 20 | 18 | 16 | 15 | 13 | 10 | 7 | L |
| M | 17 | 16 | 15 | 14 | 13 | 12 | 11 | 10 | 9 | 7 | 5 | M | 25 | 23 | 21 | 19 | 18 | 16 | 15 | 14 | 12 | 8 | 6 | M |

W: 36.48 = 0.00%   ⊕ ⊕   T: 19.92 = 0.00%     |     W: 52.00 = 0.00%   ⊕ ⊕   T: 27.83 = 0.00%

Prices in this report reflect our opinion of HIGH CASH ASKING PRICES. These prices are often discounted and may be substantially higher than actual transaction prices. No guarantees are made and no liabilities are assumed as to the accuracy or validity of this information © 2023by Rapaport USA Inc. All rights reserved. Reproduction in any form is strictly prohibited.

The Complaint alleges that Rapaport has obtained copyright registrations covering "editions of the Rapaport Price List" and lists eight such registrations, allegedly covering some of the Price Lists published in 2022, 2023, and 2024. Compl. ¶ 20. In fact, these registrations are for

a glossy semi-monthly magazine called RAPAPORT containing up to nearly 100 pages per issue of articles and other editorial content, in addition to some version of a price list (the "Magazine").[3]

Specifically, a search on the Copyright Office site for the registration numbers listed in the Complaint shows that each registration is for a "serial" titled "Rapaport" with a frequency of "every two months" – underlined not a weekly publication called "Rapaport Price List" or "Rapaport Diamond Report," as alleged in the Complaint.  See Leish Decl. ¶ 3 and Ex. B.[4]  The volumes and numbers listed in the copyright search results match the volumes and numbers of the corresponding editions of the Magazine.  For example, registration number TX0009428011 states that it is for the January 1, 2024 and March 1, 2024 issues of a serial called Rapaport, Volume 47, Numbers 1 and 2 (Leish Decl. Ex. B), and the January-February 2024 and March-April 2024 issues of the Magazine as found on the Rapaport web site are Volume 47 Number 1 and Volume 47 Number 2, respectively.   Young Decl. Ex. C.   In addition to failing to show that it has registered *any* standalone weekly Price Lists, Rapaport does not allege that it has obtained registrations for any individual prices.  The last registration obtained by Rapaport is for the July 2024 edition of the Magazine.  Compl. ¶ 20.

Nivoda – or, to be more precise, Nivoda's UK-based parent company Nivoda Limited - publishes a website at www.nivoda.com.  Compl. ¶ 3 (the "Website").  The Complaint alleges that Nivoda "is an online business-to-business (B2B) diamond and gemstone marketplace providing

---

[3] While incomplete copies of the Magazine can be found on the Rapaport web site, the pages that apparently contain price lists are missing.  Young. Decl. ¶¶ 4-6.  Accordingly, Nivoda does not know whether the price lists in the Magazine are the same as any of the weekly Price Lists.  Id.

[4] Because Rapaport neglected to attach the copyright registrations to the Complaint, Nivoda is relying on the information available on the Copyright Office website for this Motion.  Nivoda ordered deposit copies of the listed registrations from the Copyright Office on a expedited basis on January 15, 2025, but it has not yet received them.  Leish Decl. ¶ 4. Nivoda is confident that the registrations cover the Magazine, not the weekly Price Lists, for the reasons set forth herein.

services to purchasers and suppliers around the world.  On information and belief, Nivoda's services include providing quality control, shipping and invoicing." Id. ¶21.

The following is a typical image of the Nivoda Website home page on any given day, next to a close up of a single product image, taken from Ex. C to the Young Declaration:



The Complaint alleges in the vaguest possible terms that Nivoda, in some unspecified manner, is "copying and using the Rapaport Price List." Compl. ¶ 3; see also Compl. ¶ 22 (Nivoda "has been copying, publishing, distributing, creating derivatives of, and otherwise exploiting the entirety of The Rapaport Price List").  The closest the Complaint comes to actually explaining what Nivoda is supposedly doing is the allegation that the Website "displays diamond prices based upon or otherwise copied from The Rapaport Price List." Id. ¶ 23.

In fact, as a cursory glance at the Website makes clear, Nivoda does not copy, publish, or display the Rapaport Price List as a whole, nor does it copy, publish, or display any of its

constituent parts.  Young Decl. ¶¶ 7-10 and Exs. D and E.[5]  Rather, the Website contains listings

for individual diamonds offered for sale by manufacturers and wholesalers to businesses in the

jewelry industry.  Id.  Each listing contains the actual offered sale price - a price that is not derived

from or connected to the prices on the Price List, but is provided directly to Nivoda by each

applicable seller - for the individual diamond in question.  Along with numerous other unrelated

details, each listing also contains a reference to the percentage by which the listed sale price differs

from the relevant benchmark for that category of diamond (the word "Rapaport" is never used).

Id.  That is the sole, even tangential, reference to the Rapaport prices anywhere on the Website.

Essentially, Rapaport's argument is that Nivoda's mere mention of the percentage by which the

actual sale price differs from the industry-standard benchmark price is a copyright violation.

## STANDARD OF REVIEW

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Matson v. Board of Educ., 631 F.3d 57, 63 (2d Cir. 2011) (quoting Iqbal).  Although the

allegations in the Complaint generally are accepted as true for purposes of a motion to dismiss, the

court may reject the truthfulness of allegations that are "contradicted by more specific allegations

or documentary evidence."  L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011);

see also In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) ("The

---

[5] As set forth infra at p. 20, the Court must consider the actual content of the Nivoda site rather than the inaccurate allegations about the site's content contained in the Complaint.

court need not accept as true an allegation that is contradicted by documents on which the complaint relies").  In addition, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006).

## ARGUMENT

## I.    RAPAPORT HAS NOT OBTAINED COPYRIGHT REGISTRATIONS FOR THE WEEKLY PRICE LISTS

The Complaint must be dismissed at the outset because it suffers from a fatal defect: despite its claims to the contrary, Rapaport has not actually obtained copyright registrations for the allegedly infringed Price Lists.  Ownership of a valid copyright registration is a statutorily-mandated prerequisite to any claim for copyright infringement.  17 U.S.C.A §411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"); see also Sohm v. Scholastic Inc., 959 F.3d 39, 53 (2d Cir. 2020).  The Supreme Court has made clear that the registration must actually be obtained, not just applied for, before a copyright suit can be filed.  Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC, 586 U.S. 296 (2019).  Moreover "a prematurely filed suit must be dismissed" even if the plaintiff subsequently obtains a registration and seeks to amend the Complaint. Malibu Media, LLC v. Doe, No. 18-CV-10956 (JMF), 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019).

Here, Rapaport alleges that Nivoda has infringed its copyrights in the Price List as published "weekly on Thursdays at 11:59 pm EST."  Compl. ¶ 18.  Rapaport then alleges that it "has various federal copyright registrations covering editions of The Rapaport Price List" and provides examples of eight such registrations.  Compl. ¶ 20.  This odd phrasing – "editions" rather than "the weekly editions" or "all editions" – is not accidental, because as it turns out, the copyright

registrations in question on their face <u>are not registrations of the weekly Price List at all</u>.   Rather, as set forth <u>supra</u> at pp. 5-6,  the registrations are for various editions of RAPAPORT Magazine.

While each edition of the Magazine covered by the registrations does appear to include some version of a price list, the Complaint does not allege that Nivoda has infringed a price list published in the Magazine six times a year– it accuses Nivoda of copying and distributing the weekly price list as published on Thursdays at 11:59 p.m. on the Rapaport web site.  <u>See</u> Compl. ¶ 29 ("On information and belief, Nivoda obtains The Rapaport Price List by scraping or harvesting the information from Rapaport Sites; and/or by causing an authorized subscriber to breach the terms and conditions of their Rapaport Price List subscription"); <u>see also</u> Compl. ¶2 (Price List in suit is "updated weekly to reflect changes in the global diamond markets").

The Complaint provides no details as to any specific element of any particular price list that Nivoda has supposedly infringed, and it is impossible to tell from the Complaint if anything published by Nivoda is in any way drawn from one of the semi-monthly price lists contained in the Magazines covered by the copyright registrations, rather than the unregistered weekly Price Lists.  It is not even clear if any of the semi-monthly print price lists are the same as any of the allegedly infringed lists published on line "weekly on Thursdays at 11:59 pm EST."  Compl. ¶ 18.

Moreover, despite its claims to the contrary, Rapaport has not registered *any* Price List as a standalone document, and the fact that the Magazine has been registered as a collective work does not mean that the Copyright Office has determined that the price list contained therein, or any of its component prices, are copyrightable. <u>Feist Publications, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 348 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected"); <u>see also</u> <u>Boisson v. Banian, Ltd</u>, 273 F.3d 262, 268 (2d Cir. 2001) (same); <u>Coscarelli v. ESquared Hosp. LLC</u>, No. 18-CV-5943 (JMF), 2021 WL 5507034, at *15

9

(S.D.N.Y. Nov. 24, 2021) (plaintiff failed to state a claim for copyright infringement based on copying of recipes from plaintiffs' copyrighted cookbooks since recipes are not copyrightable and plaintiff failed to allege infringement of any protectible elements of the cookbooks).

Since Rapaport has not plausibly alleged that it has registered the copyrights in any of its allegedly infringed Price Lists, it is precluded from suing for copyright infringement over those lists. 17 U.S.C.A §411(a).

## II. RAPAPORT FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

In order to state a claim for copyright infringement, a plaintiff must allege facts showing "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." Feist, 499 U.S. at 349-50. Courts also require that "plaintiffs plead which original works are the subject of the copyright claim to ensure defendants have adequate notice of the identity of the copyrights allegedly infringed." Energy Intel. Grp., Inc. v. Jefferies, LLC, 101 F. Supp. 3d 332, 339 (S.D.N.Y. 2015). Under the Iqbal/Twombly standard, the facts supporting these elements must be plausibly pled. Id. Here, Plaintiff cannot demonstrate any required element because (a) the individual prices are not entitled to protection as a matter of law and (b) even if the individual prices could be considered original, protectible expression, Nivoda has not copied them.

### A. Plaintiff's Individual Prices Are Not Copyrightable

#### 1. *The Prices Are Facts Not Entitled to Copyright Protection*

"The most fundamental axiom of copyright law is that no author may copyright his ideas or facts he narrates." Feist, 499 U.S. at 344; see also 17 U.S.C. § 102(b) ("[i]n no case does copyright authorship extend to any idea. . .") Applying this bedrock principle, federal courts have found that individual prices such as those at issue here are facts incapable of protection. See Miracle Blade, LLC. v. Ebrands Commerce Group, LLC., 207 F. Supp. 2d 1136, 1150-51 (D. Nev.

10

2002) ("Plaintiff's allegations that defendants copied plaintiff's price should also not be considered since price is a non-copyrightable fact"); <u>Project Development Group, Inc. v. O.H. Materials Corp.</u>, 766 F. Supp. 1348, 1354 (W.D. Pa. 1991) ("Estimates of [] price [are] factual"), <u>aff'd</u>, 993 F.2d 255 (3rd Cir. 1993); Copyright Office, Examination Practices, Chapter 613.7 (2021) (the author of a compilation of prices "should not be named as the author of the actual prices [because] they are mere facts that are not eligible for copyright protection"); <u>see also</u> <u>New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.</u>, 389 F. Supp. 2d 527, 536-8 (S.D.N.Y. 2005) (noting that Copyright Office had declined to register plaintiff's individual futures contract settlement prices on the ground that the prices were uncopyrightable facts, and instead only registered the entirety of plaintiff's database as a collective work), <u>aff'd</u>, 497 F.3d 109 (2d Cir. 2007).

Rapaport makes a single allegation of infringement – that Nivoda "displays diamond prices based upon or otherwise copied from The Rapaport Price List."[6] Compl. ¶23. Rapaport seems to contend that the individual prices it sets for the diamond industry should be treated differently than other prices because they are a "unique product of Rapaport USA's analysis and sophisticated expert industry opinion derived from its extensive market research and proprietary knowledge, and from Rapaport USA's decades of knowledge, investment, and industry relationships." Compl. ¶14; <u>see also</u> <u>id</u>. ¶2 (prices are the "result of Rapaport USA's extensive hard work and expertise in the diamond industry"). This argument is unavailing.

First, hard work does not give rise to copyrightability. See <u>Feist</u>, 499 U.S. at 359–60 ("[O]riginality, not 'sweat of the brow,' is the touchstone of copyright protection...."); <u>Sparaco v.</u>

---

[6] Rapaport also claims in passing that Nivoda "provides the Rapaport Price List, in whole or in part, to Nivoda's own subscribers for free," Compl. ¶24, but this too is a bare, unsupported (and entirely false) allegation that plainly fails the <u>Iqbal/Twombly</u> standard. <u>Iqbal</u>, 556 U.S. at 681 ("conclusory" allegations are not entitled to presumption of truth on a motion to dismiss).

Lawler, Matusky, Skelly, Eng'rs LLP, 303 F.3d 460, 466 (2d Cir.2002) ("the earlier notion that an author's labor in discovering facts justified giving the author protection against the copying of those facts" has been "repudiate[d]").)

Second, characterizing a price as an expression of "opinion" does not render the price protectible.  The prices here, even if arrived at through some degree of judgement and discretion, are no more than a fact or idea of the price of each diamond. See New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109 (2d Cir. 2007);  BanxCorp v. Costco Wholesale Corp., 978 F. Supp. 2d 280 (S.D.N.Y. 2013).

In New York Mercantile, the Second Circuit considered whether plaintiff's settlement prices for futures contracts were protectible expressions of opinion.  Before ultimately concluding that the claim was barred by the merger doctrine (discussed below), the court found that there is a "strong argument" that the settlement prices are merely reflections of an empirical reality, and therefore uncopyrightable facts. In explaining what the settlement prices actually measure, the Court reasoned as follows:

> For high-volume months, settlement prices are determinations of how the market values a particular futures contract. . . . Under this view, the market is an empirical reality, an economic fact about the world, that Committee members are seeking to discover. Thus, there is a strong argument that, as a matter of law, the Committee is discovering facts, not creating predictions or estimates. So characterized, there is one proper settlement price; other seemingly-accurate prices are mistakes which actually overvalue or undervalue the futures contract.

Id. at 115.

Relying on this dicta, the Court in BanxCorp held that in determining the copyright status of price data, "[w]here: (1) the raw data used to create the final value were unprotectable facts; (2) the method of converting raw data into the final value was an industry standard, *or otherwise widely accepted as an objective methodology*; and (3) the final value attempted to measure an

empirical reality, then the final value produced from raw data ordinarily is not protected by copyright." 978 F. Supp. 2d at 302 (emphasis added). As noted by the District Court in <u>BanxCorp</u>, the law should not be used to "allow a select group of people to gain a legal monopoly on information widely influential as a benchmark in financial markets." <u>Id</u>. at 308-310, referencing <u>Barclays Capital Inc. v. Theflyonthewall.com, Inc.</u>, 650 F.3d 876 (2d Cir.2011).

"The more acceptance a financial measure obtains (i.e. the more successful it is), the more 'fact-like' it becomes." <u>BanxCorp</u> 723 F. Supp. 2d 596, 605 n.7 (S.D.N.Y. 2010). In Rapaport's own words, the Price List is "the international benchmark used by dealers to establish diamond prices in all the major markets," which is "updated weekly to reflect changes in the global diamond markets." Compl. ¶ 2. As with the settlement prices for futures contracts in <u>New York Mercantile</u>, the Price List determines – again in Rapaport's own words - <u>the</u> appropriate market valuation for "what diamonds of different sizes, color and clarity should sell for in the market". Compl. ¶ 2. Rapaport thus essentially fixes the "empirical reality, the economic fact about the world," that players in the global diamond market "seek to discover." <u>New York Mercantile</u> 497 F.3d at 115. Here, Rapaport is merely "discovering facts, not creating predictions or estimates." <u>Id</u>. As a self-described "benchmark" (Compl. ¶ 2) for the global diamond market writ large, there really is only one "proper" diamond price that the market accepts as true. <u>New York Mercantile</u>, 497 F.3d at 115.

Much like the settlement prices in <u>New York Mercantile</u>, the Rapaport Price List has become so entrenched in the diamond industry that its prices function as objective numerical values derived from market activity. Compl. ¶ 2; Young Decl. ¶ 2. Just as the futures market relies on publicly available settlement prices, pricing transparency in the diamond market relies on the Rapaport Price List. The District Court's analysis in New York Mercantile, as subsequently affirmed by the Second Circuit, is directly on point:

The argument that NYMEX settlement prices do not embody facts is without merit. The numerical settlement price that arises from NYMEX's judgment and discretion reflects no more than a pure fact or idea of the present price of a futures contract. . . . *the NYMEX settlement prices are widely publicized and used as benchmarks by market participants. NYMEX settlement prices are thus real-world facts used by commodities traders to value their open positions and trigger margin calls or margin reductions.* The NYMEX settlement prices function as the actual price at which a futures contract must be settled or a commodity delivered by market participants.

New York Mercantile 389 F. Supp. 2d at 541-42 (emphasis added).

As with settlement prices, the Price List reflects "no more than a pure fact or idea" of the present price of particular sizes and qualities of diamond. There is plainly only one industry-standard diamond price at any given time – the so-called "Rap Price" – that is, by Plaintiff's own admission, then widely publicized and used as benchmarks by all market participants to determine the sell and buy prices of diamonds. Where such prices are in any event derived from raw data (carat, cut, color, clarity, fluorescence, proportions, certifications, brand premiums, economic conditions, etc), reflect an industry standard, and attempt to measure an empirical reality (the global price of diamonds), the final value cannot be protected by copyright as a matter of law. *See* BanxCorp 978 F. Supp. 2d at 299-303.

Rapaport will likely point to CCC Information Services, Inc. v. Maclean Hunter Market Reports, 44 F.3d 61 (2d Cir.1994), in which the Second Circuit found that a compilation of *predictions* of individual car price valuations could be copyrightable. However, that decision stands for nothing more than the proposition that *a wholesale taking of a compilation of opinion-based predicted prices* may be copyright infringement. Id. at 63. As the Second Circuit noted, "the takings by CCC from the Red Book are of virtually the entire compendium. . . This copying is so extensive that CCC effectively offers to sell its customers Maclean's Red Book through CCC's data base." CCC Info. Servs., 44 F.3d at 72. This does not mean that individual prices are

protectible.  See New York Mercantile Exch., 497 F.3d at 115 n.5 ("because *CCC* found that the compilation deserved protection due to 'the selection and arrangement of data' [] it was not necessary to also hold that the individual estimates were copyrightable") (citation omitted).

Here, as in New York Mercantile, and in contrast to CCC, Nivoda does not engage in "wholesale copying and sale of the [Price List], but rather, uses the [Price List] solely as the established benchmarks in the [diamond industry]." New York Mercantile, 389 F. Supp. 2d at 543. Here, too, Rapaport "is the final judge of the [] prices that market participants" in the diamond industry use to value their own trading positions.  Id.  Accordingly, its individual prices are not copyrightable.

### 2.  Copyright Protection is Barred by the Merger Doctrine

Even if the Court determines that the Price Lists are expression as opposed to facts, the merger doctrine should be applied to preclude copyright protection. Under the merger doctrine, because "only the manner of an idea's expression is copyrightable," not the idea itself, where there is only one way of expressing an idea, the idea and the expression merge, and no copyright protection attaches to either.  New York Mercantile, 497 F.3d at 116.  As in BanxCorp and New York Mercantile, the works at issue in this case are "economic indicators expressed in numerical form." BanxCorp., 978 F. Supp. 2d at 308; New York Mercantile, 497 F.3d at 117. In both cases, the court determined that copyright protection for the plaintiffs' respective price valuations was prohibited by the merger doctrine. Id.

In determining whether the merger rule applies, courts are instructed to first identify the "idea" that may be merging with its expression, and then to "look at the range of possible expressions and consider whether all possible expressions are so 'substantially similar' that granting the copyright would bar others from expressing the underlying idea." BanxCorp., 978 F.

Supp. 2d at 309.  If "there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself," the doctrine applies to preclude protection. See Kregos v. Associated Press, 937 F.2d 700, 705 (2d Cir.1991); BanxCorp., 978 F. Supp. 2d at 308.

Here, the "idea" that Rapaport is attempting to protect is the international benchmark for "what diamonds of different sizes, color and clarity should sell for in the market."  Compl. ¶ 2. For that there is one and only expression: whatever Rapaport determines the price of a particular diamond is traded for on a particular day.  Once a price is incorporated into the Price List, these figures – by Rapaport's own admission -  become the market benchmarks the industry relies on to buy and sell any given diamond on any given day.  Compl. ¶ 2.  As noted in BanxCorp, the key to the application of merger in New York Mercantile was that "any settlement price for a particular futures contract would be determined based on the same underlying market facts, [and] any dissension would be exceptionally narrow." BanxCorp., 978 F. Supp. 2d  at 309, citing New York Mercantile, 497 F.3d at 117-18. Prices for diamonds are also determined based on the same underlying market facts – carat, cut, color, clarity, etc – and the Rapaport pricing structure is the only price that matters in the industry. "The crucial point is that their expressive variation is very low, even negligible, because the purpose of computing and publishing a national average rate is to give the consumer or the customer insight into the fact of what is going on in a national market. The goal is to create a 'benchmark,' in Plaintiff's own parlance." BanxCorp, 978 F. Supp. 2d at 310-11. Here, too, the purpose of publishing the Rapaport Price List is to give insight into what the actual international market for diamond prices is. In Plaintiff's exact parlance, the goal is to create a "benchmark", and that goal has been achieved. Thus, "the merger doctrine would bar copyright protection [even] if the [prices] were considered expressions and not facts." Id. at 311.

B.  <u>Rapaport Fails to Adequately Allege Actionable Copying</u>

Even assuming *arguendo* that any portion of the Rapaport Price List could be entitled to copyright protection, Defendant is still entitled to dismissal because Plaintiff has failed to plausibly allege (1) that Defendant copied any protectable elements; and (2) that such elements are substantially similar.  <u>Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.</u>, 602 F.3d 57, 63 (2d Cir. 2010) (copyright plaintiffs "must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.")

1.  *Plaintiff Fails to Allege Infringement of Protectable Elements*

Rapaport vaguely alleges that Nivoda's website "displays diamond prices based upon or otherwise copied from The Rapaport Price List". Compl. ¶ 23. As discussed above, Nivoda does not actually display diamond prices based upon or copied from the Price List, and in any event, Rapaport's individual diamond prices are non-copyrightable facts.  Even if Rapaport's claim is viewed as asserting infringement of a *compilation* of prices as opposed to the individual values, (which Rapaport does not actually plead), the claim still fails.  A compilation of unprotectable facts *may* be copyrightable to to the extent that it features "original selection, coordination or arrangement." <u>Feist,</u> 499 U.S. at 360.  Any such copyright is exceedingly thin and "does not extend to the facts it contains." <u>Id</u>. In order to state a plausible claim for infringement of a compilation, a plaintiff must allege specific copying of the protectible components of the compilation. <u>Key Publications, Inc. v. Chinatown Today Publishing Enters., Inc</u>., 945 F.2d 509, 512 (2d Cir. 1991).

Nowhere in the Complaint is the term "compilation" even mentioned, let alone alleged to have been infringed. Neither is there a single allegation regarding any infringement of the "selection, coordination or arrangement" of the Price List. In fact, the Complaint fails to allege

17

with any specificity a *single* instance of actual infringement of *any* copyrightable element. And a glance at the Nivoda site confirms that Nivoda has not, in fact, copied any element of the selection, coordination, or arrangement of the Price List. Young Decl. ¶¶ 7-10 and Exs. D and E. Under the Iqbal/Twombly standard, the claim should be dismissed on these grounds alone.

### 2. There Is No Substantial Similarity

Even if Rapaport were to allege infringement of any protectable element of the Price List, the Court must still determine that the works are substantially similar. A finding of substantial similarity "requires that the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred." Ringgold v. Black Ent. Television, Inc., 126 F.3d 70, 75 (2d Cir. 1997). "The qualitative component concerns the copying of expression, rather than ideas," whereas "[t]he quantitative component generally concerns the amount of the copyrighted work that is copied." Id. In reviewing the work, the Court considers observability from the perspective of the "average lay observer." Sandoval v. New Line Cinema Corp., 147 F.3d 215, 218 (2d Cir. 1998).

It is well settled that lack of substantial similarity may be determined on a motion to dismiss. See Peter F. Gaito Architecture, 602 F.3d at 64 ("[w]hen a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because 'what is required is only a visual comparison of the works'") (citation omitted); see also Gal v. Viacom Int'l, Inc., 403 F.Supp.2d 294, 305 (S.D.N.Y.2005). In assessing the plausibility of the allegations in the Complaint under the Iqbal/Twombly standard, the Court's visual assessment of the works at issue controls over any "contrary allegations, conclusions or descriptions of the works contained in the pleadings." Peter F. Gaito Architecture, 602 F.3d at 64; see also Kelley v. Morning Bee, Inc., No. 1:21-CV-8420-GHW, 2023 WL 6276690, at *5 (S.D.N.Y. Sept. 26, 2023).

Nivoda's Website lists individual diamonds for sale. Young Decl. Exs. D and E. It provides an image of each diamond, followed by a brief description of the shape, cut, color, clarity and carat of the diamond, delivery details, and the sale price determined by the seller. Id. Above each sale price is a percentage by which such price differs from the industry benchmark Rapaport price for that category. Id. There is no other even remote use or reference to any element of the Rapaport Price List anywhere on the Website. Id.

In contrast, the weekly Price List typically consists of a short form narrative news section followed by a formatted table featuring categories of diamond organized by carat weight (e.g., 0.50 ct, 1.00 ct, 2.00 ct); color grades (e.g., D, E, F, up to M); clarity grades (e.g., IF, VV21, VVS2, VS1, SI2, I1); and price per carat in hundreds of dollars. Young Decl. Ex. A.

There is plainly no substantial, or even remote, similarity between the Website and the weekly Price List, either qualitatively or quantitatively. The Website does not feature or in any way contain, copy, reproduce, reference or otherwise use *any* of Rapaport's protected expression of the Price List, including but not limited to the "News" text, the table, the selection and arrangement, and/or any individual values, to the extent any such expression is even protectable in the first instance (and at least in the case of values, it is not). Contrary to Rapaport's vague and unsubstantiated allegation, the Website does not even "display[] diamond prices based upon or otherwise copied from The Rapaport Price List". Compl. ¶ 23. The Complaint does not and cannot point to any instance in which any price on the Website was copied or based on any price in any Price List, because there is none. The only even tangential reference to the prices is the indication of a percentage difference between the actual sale price and the very benchmark price Rapaport claims to establish for the market.

When the two works are thus compared, it becomes clear that Plaintiff fails the substantial similarity test.  See, e.g., Matthew Bender & Co. v. W. Pub. Co., 158 F.3d 693, 704 (2d Cir. 1998) (copyright protection for a factual compilation is "thin," and a work containing the same facts or non-copyrightable elements will not infringe unless it "feature[s] the same selection and arrangement" as the original compilation); see also Jane C. Ginsburg, No "Sweat"? Copyright and Other Protection of Works of Information After Feist v. Rural Telephone, 92 Colum.L.Rev. 338, 349 (1992) (noting that under Feist, nothing "short of extensive verbatim copying" will amount to infringement of a compilation).  This is all the more true when the Website is compared to the glossy editorial Magazine containing articles, photographs, and other editorial content that Rapaport's copyright registrations actually cover (Young Decl. Ex. B), which is obviously and completely different in every conceivable way from the Website.

## III.    NIVODA'S REFERENCE TO A PERCENTAGE DISCOUNT IS FAIR USE

Even if Rapaport could somehow establish that it has valid copyright registrations; that individual diamond prices are copyrightable; that Nivoda has copied protectible elements of the Price List, and that Nivoda's expression is substantially similar to Rapaport's protected expression, the Complaint should nevertheless still be dismissed on the alternate ground that Nivoda's reference to a percentage discount off the benchmark price for individual diamonds – the only reference, albeit an indirect one, to Rapaport's prices on the Nivoda site – is fair use.

### A.    The Court Can Find Fair Use On a Pre-Answer Motion to Dismiss

The Second Circuit has recognized that fair use may be "so clearly established by a complaint as to support dismissal of a copyright infringement claim" on a pre-answer motion to dismiss.  TCA Television Corp. v. McCollum, 839 F.3d 168, 178 (2d Cir. 2016) (citation omitted).  Accordingly, district courts in this Circuit have not hesitated to grant motions to dismiss on fair

use grounds in appropriate cases.  See, e.g., Kelley, 2023 WL 6276690, at *11-16; Brody v. Fox Broad. Co., LLC, No. 22CV6249 (DLC), 2023 WL 2758730, at *4 (S.D.N.Y. Apr. 3, 2023); Brown v. Netflix, Inc., 462 F. Supp. 3d 453, 460, 464 (S.D.N.Y. 2020), aff'd, 855 F. App'x 61 (2d Cir. 2021); LMNOPI v. XYZ Films, LLC, 449 F. Supp. 3d 86, 94 (E.D.N.Y. 2020); Whiddon v. Buzzfeed, Inc., 638 F. Supp. 3d 342, 350 (S.D.N.Y. 2022); Marano v. Metro. Museum of Art, 472 F. Supp. 3d 76 (S.D.N.Y. 2020), aff'd, 844 F. App'x 436 (2d Cir. 2021) (summary order).

"At this stage of the litigation, the Court's task is to determine whether 'the facts necessary to establish the defense are evident on the face of the complaint,' including any materials properly incorporated into the complaint." Hughes v. Benjamin, 437 F. Supp. 3d 382, 389 (S.D.N.Y. 2020) (citation omitted); see also Yang v. Mic Network Inc., No. 20-4097-CV, 2022 WL 906513, at *1 (2d Cir. Mar. 29, 2022)  ("when 'the only two pieces of evidence needed to decide the question of fair use' are 'the original version' and the allegedly infringing version, it is proper to decide the issue on a motion to dismiss") (citing Cariou v. Prince, 714 F.3d 694, 707 (2d Cir. 2013)).

Here, the Complaint and the materials incorporated by reference into the Complaint demonstrate that Nivoda's actions constitute fair use as a matter of law.

B.    The Fair Use Factors Mandate Dismissal

Fair use is a "flexible" concept and its application "may well vary depending upon context."  Google LLC v. Oracle Am., Inc., 593 U.S. 1, 20,(2021).  In particular, copyright protection is weaker, and the fair use defense is stronger, where – as here – the copyrighted material is factual in nature or where it serves a "utilitarian" rather than an artistic function.  Google, 593 U.S. at 20; see also Whiddon, 638 F. Supp. 3d at 354 ("greater leeway [is] allowed to a claim of fair use where the work is factual or informational").  In assessing fair use, courts consider a non-exhaustive list of factors including (1) the purpose and character of the use, (2) the nature of the

copyrighted work, (3) the amount used in relation to the copyrighted work as a whole, and (4) the effect of the use on the potential market.  Id.  These four factors "guide but do not control our fair use analysis and 'are to be explored, and the results weighed together, in light of the purposes of copyright.'" Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc., 150 F.3d 132, 141 (2d Cir. 1998) (citation omitted).

The first fair use factor "considers the reasons for, and nature of, the copier's use of an original work.  The central question it asks is whether the new work merely supersede[s] the objects of the original creation ... ('supplanting' the original), or instead adds something new, with a further purpose or different character." Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 598 U.S. 508, 509 (2023) (internal citations omitted).

Rapaport asserts that its purpose in publishing the Price List is to set "the international benchmark used by dealers to establish diamond prices in all the major markets."  Compl. ¶ 2.   It therefore provides a comprehensive overview of a wide range of diamond prices broken down into various categories.  In contrast, the Website lists individual diamonds for sale, provides a sale price offered by the manufacturer or wholesaler of that diamond, and notes the percentage difference between the sale price and the "international benchmark" price established by Rapaport.  Providing this information for individual diamonds on the market does not in any way "supplant" or "supersede" the comprehensive, detailed table of benchmark prices in the Price List, nor create any sort of competing benchmark.

The fact that Nivoda's site is commercial in nature does not change the analysis. As the Supreme Court has held, if "commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107," which "are generally conducted for profit in this country." Campbell v. Acuff-Rose

Music, Inc., 510 U.S. 569, 584 (1994) (quotations and citation omitted); see also Authors Guild v. Google, Inc., 804 F.3d 202, 219 n.20 (2d Cir. 2015) ("there is no reason for presuming that a commercial use is not a fair use").  Accordingly, the first factor favors Nivoda.

The second factor – the nature of the copyrighted work – also favors a finding of fair use. This factor "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." Campbell, 510 U.S. at 586.  Where, as here, "the nature of the [work] is factual and the work had previously been published," the second factor weighs in favor of a finding of fair use.  Brody v. Fox Broad. Co., LLC, No. 22CV6249 (DLC), 2023 WL 2758730, at *4 (S.D.N.Y. Apr. 3, 2023) (citation omitted); see also Whiddon, 638 F.Supp. 3d at 354 (same); Google, 593 U.S. at 29 (where computer code at issue was "further than are most computer programs [] from the core of copyright" the second factor "points in the direction of fair use"). Accordingly, this factor also favors Nivoda.

The third factor asks "whether '[t]he extent of ... copying' is consistent with or more than necessary to further 'the purpose and character of the use.'" Castle Rock Ent., 150 F.3d at 144 (citing Campbell, 510 U.S. at 586-87).  Here, even if the bare reference to a percentage difference from the relevant Rapaport Price could be considered "copying" in the first place, any copying is "no more than necessary" to further the purpose of informing buyers how much the sale price of a particular diamond differs from the benchmark price.  Nivoda has not copied the Price List as a whole and has not copied any individual price, nor has it copied any other information or narrative content from the Price List, let alone from the rest of the Rapaport Magazine in which the price lists appear.  The third factor therefore also favors a finding of fair use.

The fourth factor evaluates the effect of the use on the market for, or value of, the original work.  17 U.S.C. § 107(4). Courts look not for theoretical or speculative harm, but for copying of "sufficiently significant portions of the original as to make available a *significantly competing substitute*."  Authors Guild, 804 F.3d at 223 (emphasis added).  The focus is whether the use would "deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original."  Id., see also Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 566 (1985).

Here, the Price List provides a comprehensive table of prices for a wide range of diamonds based on various factors for any given week, including changes from the prior week.  It would require a highly sophisticated reverse engineer to glean even some of this information from the discount percentages for individual diamonds on the Website, and even then, such information would be effectively useless without the comprehensive breakdown and price fluctuation information contained in the Price List. In other words, there is virtually no way for a user of the Website to assemble the information required to "substitute" the Price List, and no reason why anyone who might otherwise subscribe to the Price List would decide not to do so merely because of the reference to discounts for individual diamonds. Accordingly, nothing on the Website amounts to a competing substitute for the weekly Price List.

Moreover, as the Second Circuit has recognized, the mere fact that a user might be able to learn a specific fact – in this case, the benchmark price for a particular diamond – from the allegedly infringing work that could otherwise be obtained from the original work does not make the second work a "substitute" for purposes of the fourth factor because facts are not copyrightable. In Authors' Guild, the Court noted that a researcher might use the Google Books search function to learn a specific historical fact that would eliminate the need to purchase the underlying book

from which the fact was drawn, but this would not make Google Books a market "substitute" because the book author's copyright "does not extend to the facts communicated by his book [but] protects only the author's manner of expression." <u>Authors Guild</u>, 804 F.3d at 224. Likewise, even if a user could reconstruct the Rapaport price for a specific type of diamond from the Nivoda site and therefore avoid having to pay for the Price List to learn the benchmark price for that particular diamond, the benchmark price of a diamond is a fact that is not protected by copyright in any event. Since all four fair use factors weigh in Nivoda's favor, the Complaint should be dismissed on the additional ground that any copying by Nivoda was nonactionable fair use.

## CONCLUSION

Rapaport's Complaint attempts to use copyright law to prevent any reference to industry-standard diamond price benchmarks. This effort to restrict pricing information is legally unsustainable. For all of the reasons set forth above, the Motion to Dismiss should be granted, the Complaint should be dismissed with prejudice, and Nivoda should be awarded its fees and costs.

Dated:   New York, New York          KLARIS LAW PLLC
         March 4, 2025

                                    /s/ Matthew A. Leish
                                    Matthew A. Leish
                                    161 Water Street, Suite 904
                                    New York, New York 10038
                                    Telephone: (646) 779-4882
                                    matthew.leish@klarislaw.com

                                    *Attorneys for Defendant Nivoda USA LLC*