```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| RAPAPORT USA, INC.,<br><br>          Plaintiff,<br><br>     -against-<br><br>NIVODA USA LLC,<br><br>          Defendant. | 25-cv-171 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

In January 2025, plaintiff Rapaport USA, Inc. ("Rapaport") filed suit against defendants Nivoda, USA LLC ("Nivoda"), Nivoda Limited, and David Sutton, alleging that they infringed its copyrights for "The Rapaport Price List." A month later, Rapaport voluntarily dismissed its claims against Nivoda Limited and David Sutton without prejudice. Nivoda has now moved to dismiss the remaining claim against it. After careful consideration, the Court grants the motion, and directs the filing of final judgment dismissing the complaint with prejudice.

I.   Background

The following facts are alleged in Rapaport's complaint or integral to it. Rapaport, a Nevada corporation that provides various services related to the sale of diamonds, creates and publishes "The Rapaport Price List" (the "List"), a chart that sets out "what diamonds of different sizes, colors, and clarity should sell for in the market." See ECF No. 1 ("Complaint") ¶ 2. The List is the "unique product of [Rapaport's] analysis and sophisticated expert industry opinion

1

derived from its extensive market research and proprietary knowledge, and from [its] decades of knowledge, investment, and industry relationships" Id. at ¶ 14; see also id. at ¶ 2. ("[The List] is the result of [Rapaport's] extensive hard work and expertise in the diamond industry."). As a result, the List serves as an "international benchmark" that is "used by dealers to establish diamond prices in all major markets." Id. To that end, the List is published in weekly editions that reflect "changes in the global diamond markets" and is distributed to paid subscribers every Thursday at 11:59 PM EST. Id. at ¶¶ 2, 15, 18.

Nivoda, a Delaware limited liability company, owns and operates an online diamond and gemstone marketplace. Id. at ¶ 21. Rapaport alleges that, since the summer of 2023, "Nivoda has been copying, publishing, distributing, creating derivatives of, and otherwise exploiting the entirety of [the List]" without authorization by "display[ing] diamond prices based upon or otherwise copied from [the List]" on its website. Id. at ¶¶ 22, 23, 25-27. Indeed, Nivoda's website displays the percentage difference between the price that Nivoda charges for particular diamonds and the international benchmark price for those diamonds, which is derived from the List.[1] For example,

---

[1] In connection with its motion to dismiss, Nivoda submitted screenshots of its website. See ECF No. 24, Exhibits 4 & 5. Although those screenshots were not attached to Rapaport's complaint, they are integral to it. After all, Rapaport's allegations are based on the contents of Nivoda's website. Moreover, Nivoda does not meaningfully dispute the authenticity or accuracy of the screenshots. Accordingly, the Court may consider them in deciding Nivoda's motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2002). Those

2

Nivoda's website indicates that Nivoda offered a particular diamond for "$1,870.72" at a "64.02%" discount. See ECF No. 24, Exhibit E, at 1. According to Rapaport, Nivoda website users can therefore access the prices on the List free of charge. Id. at ¶ 24. By thus exploiting the List, Nivoda has promoted the sale of its diamonds and thereby grown its business at the expense of Rapaport and other diamond traders that subscribe to the List. Id. at ¶¶ 31-35.

In January 2025, Rapaport filed suit against Nivoda. The complaint also named Nivoda Limited (a related English company) and David Sutton (the co-founder and CEO of Nivoda and Nivoda Limited) as defendants. In the complaint, Rapoport alleged that Nivoda and Nivoda Limited had engaged in copyright infringement and that Sutton was vicariously liable for that infringement. Shortly thereafter, Rapaport moved to dismiss the claims against Nivoda Limited and Sutton without prejudice, which the Court granted. See ECF No. 17. Nivoda has now moved to dismiss the complaint with prejudice. See ECF No. 22.

II. Legal Standard

On a motion to dismiss, courts must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light more favorable to plaintiff, and construe the complaint liberally."[2] Rescuecom Corp. v. Google, Inc.,

---

screenshots demonstrate that Nivoda's website publishes the percentage difference between the price that Nivoda charges for a particular diamond and the corresponding international benchmark.

[2] Unless otherwise indicated, all case quotations omit internal alterations, brackets, citations, ellipses, quotations, and quotation

562 F.3d 123, 127 (2d Cir. 2009). "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

III. Discussion

Nivoda raises three alternative bases for dismissal. First, Nivoda argues that Rapaport has failed to allege that it holds valid copyrights for the weekly editions of the List. Second, Nivoda argues that Rapaport has not adequately alleged that Nivoda engaged in copyright infringement. And finally, Nivoda argues that the fair use defense applies in any event. If Rapaport has not adequately alleged that Nivoda engaged in copyright infringement, then the Court need not determine whether Rapaport adequately alleged that it holds valid copyrights for the weekly editions or whether the fair use defense

---

marks.

4

applies. Accordingly, the Court proceeds to consider whether Rapaport has adequately alleged that Nivoda engaged in copyright infringement.

A. Allegations of Infringement

To determine whether Rapaport has adequately alleged that Nivoda engaged in copyright infringement in this case, the Court must determine whether the "merger doctrine" applies to the List.[3]

"It has been long accepted that copyright protection does not extend to ideas; it protects only the means of expression employed by the author." CCC Info. Servs., Inc. v. Maclean Hunter Market Reports, Inc., 44 F.3d 61, 68 (2d Cir. 1994); see also 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). "Because ideas are too important to the advancement of knowledge to permit them to be under private ownership, and because open public debate, which is essential to a free democratic society, requires free access to the ideas to be debated, ideas cannot be copyrighted." N.Y. Mercantile Exchange, Inc. v. Intercontinental Exchange, Inc., 497 F.3d

---

[3] Nivoda invokes the merger doctrine to argue that the List is not copyrightable. However, the Second Circuit has made clear that "consideration of the merger doctrine takes place in light of [any] alleged copying to determine if infringement has occurred, rather than in an analyzing copyrightability of the original work." CCC Info. Servs., Inc. v. Maclean Hunter Market Reports, Inc., 44 F.3d 61, 72 n.26 (2d Cir. 1994). Accordingly, the Court assumes without deciding that the List is copyrightable and that Nivoda has copied it, and proceeds to consider the applicability of the merger doctrine.

109, 116 (2d Cir. 2007). "Instead, only the manner of an idea's expression is copyrightable." Id.

"To ensure free access to ideas, courts have applied the merger doctrine." Id. "The merger doctrine bars a copyright of even original expression when there is essentially only one way to express an idea and thus the idea and its expression are inseparable." MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 194 (2d Cir. 2004); see N.Y. Mercantile Exchange, Inc., 497 F.3d at 116-17. Under such circumstances, "[t]he expression is . . . said to merge with [an] unprotected attribute [of the work]," thereby "depriv[ing] [the work] of protection." Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 132 n.4 (2d Cir. 2003). Courts must exercise "considerable care" in applying the merger doctrine. N.Y. Mercantile Exchange, Inc., 497 F.3d at 117. After all, "if the merger doctrine is applied too readily, arguably available alternative forms of expression will be precluded; if applied too sparingly, protection will be accorded to ideas." Id.

In applying the merger doctrine, courts must first identify "the idea that might be merging with its expression." Id. Here, the idea is the market price of diamonds based on their size, color, and clarity. As noted above, the complaint alleges that the List sets the "international benchmark" for "what diamonds of different sizes, colors, and clarity should sell for in the market" and that the prices on the List are "the unique product of [Rapaport's] analysis and sophisticated expert industry opinion derived from its extensive

6

market research and proprietary knowledge." Complaint ¶¶ 2, 14. The complaint further alleges that "Nivoda's marketplace service displays diamond prices based upon or otherwise copied from [the List]." Id. at ¶ 23. Therefore, for purposes of determining the applicability of the merger doctrine in this case, the key question is whether there are multiple ways to express the diamond prices featured on the List.

After careful consideration, the Court concludes that there are not. The only way to express the price of a particular diamond or type of diamond is with the specific number corresponding to that price. See BanxCorp v. Costco Wholesale Corp., 978 F. Supp. 2d 280, 310 (S.D.N.Y. 2013) ("[T]he simplicity and objectivity of the computation makes one and only one number the sole possible expression."). Accordingly, the merger doctrine applies to the List and Rapaport cannot be liable for copyright infringement.

In N.Y. Mercantile Exchange, the Second Circuit confronted similar allegations and reached the same conclusion. Plaintiff NYMEX Clearing House ("NYMEX"), a financial intermediary that facilitated the exchange of futures and options contracts for energy commodities on the New York Mercantile Exchange, determined settlement prices for settlement contracts on a daily basis. The settlement prices were defined as "the value, at the end of each trading day, of a particular futures contract for a particular commodity for future delivery at a particular time." N.Y. Mercantile Exchange, 497 F.3d at 111. NYMEX later filed a suit against defendant IntercontinentalExchange, Inc. ("ICE"), alleging that ICE had infringed its copyright for the

7

settlement prices by copying the prices, adjusting them for its own purposes, and forwarding them to another entity.

The Second Circuit disagreed with NYMEX and sided with ICE. Assuming without deciding that the settlement prices constituted original works rather than discovered facts about the market for futures contracts, the Second Circuit reasoned that "all possible expression [took] the same form" -- that is, "a number." Id. at 118. Put differently, there was no way to express the settlement prices other than with the numbers associated with those prices. Because "grant[ing] NYMEX copyright protection" would have "effectively accord[ed] protection to the idea itself" and prevented ICE from valuing NYMEX's contracts, the Second Circuit concluded that the merger doctrine applied and declined to extend copyright protection to NYMEX's settlement prices. Id.; see also id. ("[I]n using the settlement prices, ICE took nothing more than ideas, for which the copyright law affords no protection to the author.").

Another district court in the Southern District reached a similar conclusion in BanxCorp. In that case, the district court was asked to consider the applicability of the merger doctrine to a publisher's list of national average rates of interest for various financial products. Assuming, as the Second Circuit had in N.Y. Mercantile Exchange, that those rates constituted expression rather than facts, the court emphasized that the averages were "economic indicators expressed in numerical form." Id. at 308. The "crucial point" was that the "expressive variation" of the rates was "very low, even negligible"

8

because "the purpose of computing and publishing a national average rate [was] to give the consumer or the customer insight into the fact of what [was] going on in a national market" -- in other words, to "create a benchmark." Id. at 310-11 (emphasis in original). Accordingly, there was no "wide variation" of possible expression. Id. at 311.

In reaching its conclusion in this case, the Court does not hold that the merger doctrine necessarily applies any time the "idea that might be merging with [the] expression," N.Y. Mercantile Exchange, Inc., 497 F.3d at 117, involves a number. The merger doctrine may well sweep that broadly, but the Court need not reach that holding to resolve this case. Here, as in N.Y. Mercantile Exchange and BanxCorp, the plaintiff alleged that its expression consisted of numbers that served to set an industry benchmark and that the defendant had infringed its copyrights by copying and using those numbers for its own purposes -- in this case, to contextualize the prices on its website. The plaintiff did not allege, for example, that the defendant distributed its own weekly price charts, which were both substantively and stylistically identical to Rapaport's weekly editions of the List. Assuming without deciding that Rapaport holds valid copyrights for the weekly editions of the List and that Nivoda copied those editions, the Court therefore applies the merger doctrine and concludes that Rapaport has not adequately alleged that Nivoda engaged in copyright infringement.

B. Leave to Amend

Having determined that Rapaport has failed to adequately allege copyright infringement as necessary to survive Nivoda's motion to dismiss, the Court proceeds to consider whether it would be appropriate to grant Rapaport leave to amend.

"Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a court should freely give leave to amend the complaint when justice so requires." Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 71 (2d Cir. 2012) (discussing Federal Rule of Civil Procedure 15(a)(2)). However, "[m]otions to amend should generally be denied in instances of futility." McCraken v. Verisma Sys. Inc., 91 F.4th 600, 610 (2d Cir. 2024). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies." Rukoro v. Fed. Rep. of Germany, 976 F.3d 218, 228 (2d Cir. 2020).

The Court declines to grant leave to amend in this case. At bottom, Rapaport alleges that Nivoda engaged in copyright infringement by copying the prices on the List, which serves as a benchmark for diamond prices worldwide. However, as discussed above, pursuant to the merger doctrine, such copying cannot give rise to copyright infringement under the merger doctrine. Under these circumstances, amendment would be futile, so the Court does not grant leave to amend.[4]

---

[4] It should be noted that Rapaport has already filed a purported notice of appeal. On April 10, 2025, this Court issued an Order, which stated that Nivoda's motion was granted with prejudice, but that "[a]n Opinion explaining the reasons for [that] ruling [would] issue in due course, after which final judgment [would] be entered." See ECF No. 32. Two weeks later, before the Court issued this Opinion, and therefore before

10

IV. Conclusion

For the foregoing reasons, the Court grants Nivoda's motion to dismiss with prejudice. The Clerk of Court is respectfully directed to enter final judgment dismissing the complaint with prejudice, and to close the case.

SO ORDERED.

New York, NY
5/2, 2025

_____
JED S. RAKOFF, U.S.D.J.

---

final judgment was entered, Rapaport filed a purported notice of appeal. See ECF No. 33.